UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ANTHONY BACA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN ANDERSON, et al.,<br><br>Defendants. | Case No. 22-cv-02461-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

## INTRODUCTION

In the wake of George Floyd's death, people all over the country attended marches, political rallies, and demonstrations to advocate for social justice and against racial discrimination. Plaintiff David Baca, who attended one such demonstration in San Jose in May 2020, alleges that several officers of the San Jose Police Department assaulted and arrested him during the demonstration as a result of his exercise of his First Amendment rights. Baca brings a host of federal and state law claims against four police officer defendants and the City of San Jose. The defendants moved to dismiss eleven of the thirteen claims in the complaint. For the reasons provided below, Baca has stated a viable First Amendment claim against the named police officer defendants. The other claims are insufficiently pleaded and will be dismissed.[1]

## BACKGROUND

The complaint makes the following allegations, which I accept as true for purposes of the motion to dismiss. On May 29, 2020, Baca, who is Hispanic, attended a social justice

---

[1] After carefully considering the arguments and briefing submitted, I conclude that oral argument is unnecessary. *See* Civ. L.R. 7-1(b) ("In the Judge's discretion . . . a motion may be determined without oral argument [.]").

demonstration in San Jose following George Floyd's death. Complaint ("Compl.") [Dkt. 1] ¶¶ 10, 11, 14. Over the course of the demonstration, San Jose police officers formed a "skirmish line" across 7th Street between Santa Clara and San Fernando Streets, which officers used to march forward and push back demonstrators to clear the streets. *Id.* ¶ 13. As the police officers marched towards the demonstrators, the officers discharged their weapons—including gas cannisters and other projectiles—at the crowd of protestors demonstrating before them. *Id.* ¶ 15. Baca, who was standing among the other demonstrators as the police officers approached, observed that one of the police officers appeared to be aiming his weapon at demonstrators who "were likely recognizable as minorities." *Id.* Baca, who had been using his cell phone to record the oncoming police officers, shouted that this particular officer[2] was a "racist cop." *Id.* ¶ 16. Baca then approached the skirmish line while holding his cell phone out so that he could record the actions of this police officer. *Id.* ¶ 17.

As Baca approached the line of officers, defendant San Jose police officer Jonathan Anderson broke from the skirmish line and struck Baca in the throat with his baton. *Id.* ¶ 18. While Anderson continued his assault, defendant San Jose police officer Michael Simonini wrapped his arms around Baca's neck and dragged him, with the help of other San Jose police officers, behind the skirmish line so that Baca was separated from the rest of the demonstrators. *Id.* ¶ 19. Fellow defendant San Jose police officers Brett Weidner and Zachary Preuss, along with Does 1–15, "jumped onto" and/or "wrestl[ed]" Baca to the ground, while "kicking, punching, and striking" him. *Id.* ¶ 20. Defendants then handcuffed and arrested Baca. *Id.* ¶ 21. Despite Baca's "obvious and noticeable" injuries, each defendant delayed in providing medical treatment or assistance, thereby increasing Baca's pain and suffering. *Id.* ¶¶ 23–24.

Baca filed suit against Anderson, Simonini, Weidner, and Preuss, the four defendant police officers (collectively, the "officer defendants"), and the City of San Jose (collectively with the officer defendants, "defendants"), on April 21, 2022. *See generally* Compl. Baca brings a mix of

---

[2] It is unclear whether this unnamed officer is one of the officer defendants. Baca's opposition brief contends that Anderson was the unnamed police officer who targeted protestors who appeared to be minorities, *see* Opp. at 2, 5, but the complaint does not make this assertion. *See* Compl. ¶¶ 15–18.

federal and state law claims, including constitutional claims under the First, Fourth, and Fourteenth Amendments. *Id.* In particular, Baca alleges that the officer defendants used excessive force and unlawfully seized him in violation of his Fourth Amendment rights; *id.* ¶¶ 4–30; that the officer defendants deliberately or recklessly suppressed evidence in violation of the Fourteenth Amendment; *id.* ¶¶ 31–38; that the officer defendants interfered with a constitutionally protected activity in violation of the Fourteenth Amendment; *id.* ¶¶ 39–43; that the officer defendants racially discriminated against him in violation of the Equal Protection Clause; *id.* ¶¶ 44–45; and that the officer defendants conspired to violate Baca's civil rights; *id.* ¶¶ 46–53. Baca also brings a *Monell* claim against the City of San Jose. *See id.* ¶¶ 54–76. Finally, Baca asserts claims under the Bane Act and the Ralph Act against the officer defendants. *See id.* ¶¶ 78–88. Baca seeks compensatory damages; punitive damages; civil penalties and statutory damages under the Bane Act and Ralph Act; attorneys' fees; and costs of suit. *Id.* at "Prayer for Relief."

On July 19, 2022, defendants moved to dismiss eleven of the thirteen claims in the complaint for failure to state a claim. *See* Motion to Dismiss ("Mot.") [Dkt. 30] at 1. Defendants conceded that Baca had stated a claim for alleged violations of the Fourth Amendment but argued that all other claims in the complaint must be dismissed. *Id.* The matter is now fully briefed and ripe for adjudication.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

3

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

Defendants have moved to dismiss claims three through twelve for failure to state a claim. Mot. at 1. As discussed below, because Baca has plausibly alleged that the officer defendants violated the First Amendment, I **DENY** defendants' motion to dismiss that claim. After that discussion, I will address why the remainder of the claims are deficient and will be dismissed. Baca will have leave to amend all of his federal claims except for claim three.

**I. FIRST AMENDMENT CLAIM (CLAIM FOUR).**

Baca asserts that each of the officer defendants interfered with his right to speak and to protest under the First Amendment. Compl. ¶¶ 40–43. The essence of Baca's First Amendment claim is that the officer defendants assaulted and arrested him because he shouted that a police officer was racist and demonstrated his intent to film the police officer who was engaging in allegedly discriminatory actions. *Id.*

Defendants present two arguments in favor of dismissal. First, they argue that Baca's claim falters at the third element because Baca purportedly failed to allege any facts to show that

4

1  defendants used force as punishment *because of* Baca's expressive activity. Mot. at 6. Second,
2  defendants contend that they are shielded by qualified immunity because "[i]t was not clearly
3  established in May 2020 that a police officer violates the First Amendment by arresting a protestor
4  merely because that protestor was filming at the time of arrest, or merely because the protestor
5  shouted about a racist cop beforehand." Mot. at 7. Defendants are wrong on both counts. As
6  explained below, I conclude that Baca has sufficiently stated a claim for retaliatory use of force
7  under the First Amendment against the officer defendants and that these officers have not shown
8  that they are entitled to qualified immunity.

### A. Baca Has Plausibly Alleged a Violation of the First Amendment.

To establish unlawful retaliation under the First Amendment, Baca must plead facts to "show (1) he was engaged in a constitutionally protected activity, (2) [defendants'] actions would 'chill a person of ordinary firmness from continuing to engage in the protected activity,' and (3) 'the protected activity was a substantial or motivating factor in [each of the defendants'] conduct.'" *Johnson v. City of San Jose*, No. 21-cv-01849-BLF, 2022 WL 799424, at *8 (N.D. Cal. Mar. 16, 2022) (citing *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020)). The third element, which is what is at issue here, may be shown "with either direct or circumstantial evidence," and the Ninth Circuit has instructed that it "involves questions of fact that normally should be left for trial." *Index Newspapers*, 977 F.3d at 827 (citing *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)).

In support of their theory that the third element fails, defendants rely heavily on *Johnson v. City of San Jose*, which also involved a claim for retaliatory use of force under the First Amendment based on San Jose police officers' interactions with protestors in the May 2020 protests. *Johnson*, 2022 WL 799424, at *8. In that case, the plaintiff alleged that after an unknown protestor threw a plastic water bottle up in the air, the police officers deployed weapons against the protestors. *Id.* at *1. Johnson, who was hit by a foam baton projectile, subsequently brought suit against the City and various San Jose police officers. *Id.* The Hon. Beth Labson Freeman found that the plaintiff had not stated a First Amendment claim because "the plausible inference from [the plaintiff's] allegations is that [the defendant officer] fired in response to the

5

water bottle being thrown," not in response to the plaintiff's protected First Amendment activities. *Id.* at *9. As a result, Judge Freeman concluded that the plaintiff had not sufficiently alleged that his protected activity was "a substantial or motivating factor" in the police officer's conduct. *Id.*

While *Johnson* involved a similar set of facts and the same legal theory, there is one crucial difference: the plaintiff in *Johnson* did not allege any facts that could link his protected activity with the defendant's conduct. *Id.* at *9. Here, on the other hand, Baca alleged that he "shouted out" that a particular officer "was a racist cop," and then "walked toward the police skirmish line holding his cell phone in front of him, visibly manifesting his intent to record the actions of the officer who was targeting minority demonstrators." Compl. ¶¶ 16–17. The officer defendants allegedly assaulted and arrested Baca as he approached the police skirmish line with his cell phone "visibly in front of his body." *Id.* ¶ 18. This is not a case, then, where there is a "bald allegation of impermissible motive" without any "factual allegation to bolster it." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). Taking Baca's allegations as true, the protected activity (Baca's speech and demonstrated intent to record the police officers) plausibly constitutes a substantial or motivating factor in the officer defendants' conduct.

There are two other factors which support Baca's First Amendment claim. First, the short proximity in time between Baca's protected activities and the officers' conduct supports Baca's theory of retaliatory motive. "The timing of an allegedly retaliatory action can serve as circumstantial evidence of a retaliatory intent for the action." *Naveed v. City of San Jose*, No. 15-cv-05298-PSG, 2016 WL 2957147, at *5 (N.D. Cal. May 23, 2016) (citation omitted); *see also Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 744 (9th Cir. 2001) (explaining that a short "proximity in time between the protected action and the allegedly retaliatory [conduct]" is evidence that supports a First Amendment claim). Second, there are no allegations in the complaint indicating that Baca was breaking the law or that the officers had probable cause to arrest him. *See* Compl. ¶ 30 ("The Defendants' act of physical restraint and arrest of Plaintiff Baca were done illegally and not supported by probable cause . . ."). The asserted absence of probable cause further supports the inference that Baca was assaulted and arrested as a form of retaliation for Baca's speech. *Cf. Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1377 (9th Cir.

1990) (finding First Amendment violation where "[m]issing from the record here [was] any legitimate, articulate reason for Aguilar to have detained Duran").

In their reply brief, defendants urge that even if the complaint stated a First Amendment claim against Anderson, these allegations cannot support a claim against Simonini, Weidner, or Preuss. Reply at 3. For the reasons stated above, I disagree. Put simply, the nature of Baca's alleged assault and arrest reasonably suggests a retaliatory motive. In light of the allegations involving the protected First Amendment activities which were "visibly manifest[ed]" to the San Jose police officers, the near-immediate temporal proximity of Baca's activities and the officer defendants' response, and the asserted lack of probable cause, I find that the First Amendment claim against all of the officer defendants may proceed at this point.

In sum: at this early stage in the litigation, and drawing all reasonable inferences in Baca's favor, I conclude that these allegations give rise to a plausible inference that the named police officers assaulted Baca for his expressive activity. Baca has stated a First Amendment claim against Anderson, Simonini, Weidner, and Preuss. As discussed below, they have not shown that they are entitled to qualified immunity.

**B. The Officer Defendants Have Not Shown that They Are Entitled to Qualified Immunity.**

Defendants contend that they are entitled to qualified immunity because "it was not clearly established in May 2020 that a police officer violates the First Amendment by arresting a protestor merely because that protestor was filming at the time of the arrest, or merely because the protestor shouted about a racist cop beforehand." Mot. at 7. Defendants are wrong.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In analyzing whether a government official is entitled to qualified immunity, the court looks at two distinct questions." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010); *see also Greene v. Camreta*, 588 F.3d 1011, 1021 (9th Cir. 2009) (discussing the "two-step procedure" established in *Saucier*).

First, the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court decides whether the right is clearly established such that a reasonable government official would have known that "his conduct was unlawful in the situation he confronted." *Id.* at 202. "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' . . . meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). This standard "gives government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (citation omitted).

As discussed below, I find that both prongs of the qualified immunity analysis are met. As a result, the officer defendants are not entitled to invoke qualified immunity to shield themselves from Baca's First Amendment claim.

### 1. The Defendant Officers Violated Baca's Constitutional Right to Be Free from Retaliation for Engaging in Protected First Amendment Activities.

The first prong of the qualified immunity analysis requires me to determine whether, after taking all of Baca's well-pleaded allegations as true, Baca alleged that the officer defendants violated a constitutional right. *Saucier*, 533 U.S. at 201. As discussed above, Baca alleges that the officer defendants assaulted and arrested him because of his speech and manifested intent to record a police officer at a public demonstration. Compl. ¶¶ 16–21. I have already concluded that these allegations plausibly state a violation of the First Amendment. *See* Section II.A. *supra*. The first prong of *Saucier* is thus satisfied.

### 2. The Constitutional Right to Be Free from Retaliation for Recording Law Enforcement Officers Engaged in their Exercise of Official Duties in Public Places Was Clearly Established in May 2020

As of May 29, 2020, the date of the incident in question, the "constitutional right to be free

8

from retaliation while recording police activity in a public place was clearly established in the Ninth Circuit." *Redmond v. San Jose Police Dep't*, No. 14-cv-02345-BLF, 2017 WL 5495977, at *11 (N.D. Cal. Nov. 16, 2017). It has been clear in this circuit since at least 1995 that the First Amendment protects a "right to film matters of public interest." *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *see also Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects the right to photograph and record matters of public interest."). "This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins*, 899 F.3d at 1044.

In *Fordyce*, the Ninth Circuit held that citizens have the right to film matters of public interest. 55 F.3d at 439. In the decades since *Fordyce* came down, district courts in this circuit have continuously recognized a clearly established right to peacefully film police officers carrying out their duties in public. *See, e.g.*, *McComas v. City of Rohnert Park*, No. 16-cv-02705-TEH, 2017 WL 1209934, at *7 (N.D. Cal. Apr. 3, 2017) ("A reasonable officer in [defendant's] position would have known that it is a violation of a constitutional right to harass an individual who is peacefully filming the officer."); *Barich v. City of Cotati*, No. 15-cv-00350-VC, 2015 WL 6157488, at *1 (N.D. Cal. Oct. 20, 2015) ("Thus, 'under the law of this circuit there is and was' at the time of [the defendant's] conduct 'a clearly established right to record police officers carrying out their official duties.'") (internal citation omitted); *Redmond*, 2017 WL 5495977, at *11 ("As of April 17, 2013, the date of the incident in question, the constitutional right to be free from retaliation while recording police activity in a public place was clearly established in the Ninth Circuit."); *Naveed*, 2016 WL 2957147, at *6 ("Plaintiffs' right to film the arrests of Omar and Harroon was well-established when the officers arrested Plaintiffs.").

Moreover, "[p]olice officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013) (citing *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372 (9th Cir. 1990), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). In *Duran*, the Ninth Circuit held that a police officer's traffic stop and subsequent arrest of an individual who directed obscene gestures and words toward that officer was unlawful because it

was well-established that police officers may not exercise their authority for personal motives, especially in response to an individual's criticism or insults. *See* 904 F.2d at 1378 ("Whether or not officer Aguilar was aware of the fine points of First Amendment law, to the extent he is found to have detained Duran as punishment for the latter's insults, we hold that he ought to have known that he was exercising his authority in violation of well-established constitutional rights."). The Ninth Circuit has not abandoned this fundamental principle of First Amendment law. *See Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008) ("Arresting someone in retaliation for their exercise of free speech rights was violative of law clearly established at the time of Beck's arrest."); *Ford*, 706 F.3d at 1195 ("At the time the officers acted in 2007, the law in this Circuit gave fair notice that it would be unlawful to jail Ford in retaliation for his First Amendment activity."); *Adkins v. Limtiaco*, 537 F. App'x 721, 722 (9th Cir. 2013) ("Adkins' First Amendment rights [to be free from arrest for taking photos of police officers] were clearly established at the time of his arrest."); *Addison v. City of Baker City*, 758 F. App'x 582, 583 (9th Cir. 2018) ("The district court correctly concluded that Addison's right to be free from adverse police action in retaliation for constitutionally protected speech is clearly established.").

I conclude that as of May 29, 2020, the constitutional right to be free from retaliation while recording police activity in a public place was clearly established in the Ninth Circuit. As a result, the officer defendants have not shown that they are entitled to qualified immunity for Baca's First Amendment claim.

## II. BACA'S "SUPPRESSION OF EVIDENCE" CLAIM (CLAIM THREE)

Baca's third claim against the officer defendants is a Section 1983 claim for deliberate or reckless suppression of evidence under the Fourteenth Amendment. Compl. ¶¶ 31–38. Baca alleges that the officer defendants "knew that they had been instructed or ordered to run their city issued body camera while on duty on May 29, 2020," and that they "intentionally or reckless [sic] turned off or failed to turn on each body's camera during the incident involving Plaintiff Baca." *Id.* ¶¶ 32–33. Baca asserts that this suppression of evidence violated Baca's Fourteenth Amendment right to due process. *Id.* ¶ 38.

The third claim for relief is unclear and not cognizable. Mot. at 3–4. Baca appears to

10

assert a right to have police officers "activate and run their city[-] issued body camera while on duty," Compl. ¶ 32, but there is no such right. Mot. at 3. And while Baca invokes the Fourteenth Amendment right to due process, as defendants argue "the Due Process Clause does not impose an obligation on state actors to create, preserve, or maintain evidence for possible future litigation." Mot. at 4.

To state a substantive due process claim under the Fourteenth Amendment, Baca "must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) (citing *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)). To the extent that Baca contends that body camera footage from police officers is a "constitutionally protected life, liberty or property interest," *id*, Baca does not offer any authority to support this theory. Indeed, Baca does not respond to or otherwise address defendants' arguments regarding this claim in his opposition brief.

Because Baca has not shown that the asserted right to body camera footage is a constitutionally protected life, liberty, or property interest, he has not asserted a substantive due process claim under the Fourteenth Amendment. I **GRANT** defendants' motion to dismiss the third claim for "deliberate or reckless suppression of evidence." Compl. ¶ 31. As the defect lies in the legal theory, not the factual allegations, the dismissal is without leave to amend.

### III.  EQUAL PROTECTION (CLAIM FIVE)

Baca asserts that the officer defendants discriminated against him "on the basis of his racial and ethnic heritage" and acted with "racial animus" in violation of the Equal Protection Clause. Compl. ¶ 45. Defendants argue that this claim must be dismissed for lack of factual support. *See* Mot. at 8 ("Baca alleges exactly zero factual content to substantiate the grave claim that the named San Jose police officers targeted him based on his ethnicity."). They are correct.

To state an equal protection claim for discriminatory enforcement, a plaintiff must demonstrate that (1) "enforcement had a discriminatory effect" and (2) "the police were motivated by a discriminatory purpose." *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1152–53 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To establish

11

discriminatory effect, the plaintiff must show that members of a protected racial or ethnic class were arrested and subjected to force while "similarly situated" individuals were not. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."). To show discriminatory purpose, a plaintiff must establish that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Rosenbaum*, 484 F.3d at 1153 (quoting *Wayte*, 470 U.S. at 610) (internal citation omitted). "To avoid dismissal, a plaintiff must plausibly suggest the existence of a discriminatory purpose." *Recinto v. U.S. Dep't of Veterans Affs.*, 706 F.3d 1171, 1177 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 677).

The complaint does not currently contain sufficient facts to support this claim. Baca alleges that he is Hispanic and that he observed an unnamed police officer "aiming and firing his weapon at demonstrators who were likely recognizable as minorities." Compl. ¶¶ 5, 15. These two allegations, which are the only allegations contained in the complaint that bear on race, simply do not give rise to the inference that the officer defendants assaulted him at least in part because of his race. *Rosenbaum*, 484 F.3d at 1153; *see also Marks v. Santa Rosa City Sch.*, 748 F. App'x 159, 161 (9th Cir. 2019) (dismissing equal protection claim where the complaint "d[id] not allege any overtly racially motivated conduct, nor d[id] it contain allegations that could support a reasonable inference of discriminatory intent"). Baca does not allege that any of the police officers used racial slurs or otherwise engaged in acts suggestive of racial discriminatory animus towards him. He does not assert any facts that would support his theory that the officer defendants' alleged use of excessive force and false arrest was racially motivated.

Because the complaint does not currently allege facts that would support the reasonable inference that the officer defendants acted "at least in part because of" his race, I **DISMISS** the equal protection claim. I will give Baca leave to amend so that he may more clearly allege whether the officer defendants acted against him because of his race.

## IV.  CONSPIRACY (CLAIMS SIX AND SEVEN)

Baca brings two conspiracy claims against the officer defendants based on a "conspiracy to

violate plaintiff's civil rights" and "conspiracy to interfere with plaintiff's civil rights" under Section 1983 and Section 1985. Compl. ¶¶ 46–53. Defendants contend that these claims should be dismissed because Baca has not pleaded facts showing the existence of a conspiracy. Mot. at 9–10. I agree with defendants.

To state a claim for a conspiracy to violate one's constitutional rights, the plaintiff "must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (internal citation omitted); *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient."). "To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (quoting *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (internal citation and quotation marks omitted).

Baca does not allege facts demonstrating the existence of an agreement or meeting of minds. Mot. at 9–10. Given the nature of Baca's complaint, it is difficult to comprehend when or how such an agreement would have been formed. Baca alleges that he approached a line of police officers while participating in a protest and was then assaulted and arrested. Compl. ¶¶ 14–21. He does not allege that the officer defendants knew him before his arrest, nor does he allege that the officer defendants had time to develop a plan to use excessive force or unlawfully arrest him. Instead, he insists that the fact that the other police officers "affirmatively aided and assisted the officer who had initially struck" Baca gives rise to "a reasonable inference" that "all defendants had been acting in concert." Opp. at 6. But were that the case, then every allegedly improper arrest or use of force by multiple law enforcement officers would constitute an unlawful conspiracy.

The complaint's allegations that the officer defendants "formed an express or implied agreement between and among them to deprive minority protestors or demonstrators of their constitutional rights" are conclusory. Compl. ¶¶ 47, 50. Baca's conspiracy claims will be dismissed with leave to amend so that he may add the requisite factual support.

13

## V. *MONELL* CLAIM AGAINST SAN JOSE (CLAIMS EIGHT THROUGH ELEVEN)

Baca presents four different theories for why the City of San Jose is liable for the alleged constitutional violations that he experienced. Compl. ¶¶ 54–76. As explained below, none pass muster: Baca's allegations are too conclusory to state claims that are plausible on their face.

Local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Baca must plausibly plead the following elements to proceed with his *Monell* claim: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to his constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (listing elements).

"There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citation omitted). Baca alleges all three theories here, in addition to a theory based on a failure to train. *See* Compl. ¶¶ 57–59, 63–64, 69, 74–75.

"In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Arteaga v. City of Oakley*, No. 19-cv-05725-JCS, 2020 WL 511876, at *6 (N.D. Cal. Jan. 31, 2020) (citation omitted); *see also A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (explaining that the *Twombly* and *Iqbal* pleading standard applies to *Monell*

14

claims).

### A. Baca's Custom or Practice Allegations Are Conclusory (Claim Eight)

Under Section 1983, a municipality may be held liable based on an unconstitutional policy even where it is not an express municipal policy that has been formally adopted. This is because the Supreme Court has recognized that a municipality may be held liable if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

Baca has alleged that the police officer defendants acted pursuant to either "an expressly adopted policy" or based on a "widespread or longstanding practice or customs of Defendants City of San Jose and Does 51 to 75." Compl. ¶ 57. According to Baca, this "policy, practice, or custom included the affirmative physical suppression or denial of protesters and demonstrators' exercise of their rights to speak, to assemble, and to seek redress from the government, particularly as said exercise of rights is connected or related to the values of the Black Lives Matter political movement, including but not limited to: racial justice, racial equality, ending police brutality, and ending police selectively targeting black and other minority members of the community for equal treatment." *Id.* ¶ 58. These allegations are conclusory. Baca has not alleged what specifically this "express policy" provides or where it may be found. Nor has he stated *any* specific facts that render his allegations of an unconstitutional custom or practice plausible. He has not alleged any similar incidents that would tend to support an inference that these policies were "well settled." *See Lozano v. Cty. of Santa Clara,* No. 19-cv-02634-EMC, 2019 WL 6841215, at *18 (N.D. Cal. Dec. 16, 2019) (dismissing *Monell* claim based on custom and practice on the pleadings because the plaintiff had not alleged that any other person was subjected to similar treatment). Nor has he asserted any other specific facts that give rise to a plausible inference of the existence of any of the customs and practices alleged in the complaint. As a result, I dismiss Baca's *Monell* claim based on an alleged unconstitutional custom or practice.

### B. Baca's Final Policymaker Allegations Are Also Conclusory (Claim Nine)

A plaintiff can establish liability under *Monell* where "the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir. 1983)). "Whether a particular official has final policy-making authority is a question of state law." *Gillette*, 979 F.2d 1346 (citation omitted).

In support of this theory, Baca alleges that unnamed Does 75–90, who are "individual employees of either the City of San Jose or the County of Santa Clara," had "final policymaking authority" concerning the unconstitutional acts committed by the officer defendants. Compl. ¶ 63. Baca further alleges that these unnamed Does were "acting as a final policymaker" when they "authorized, endorsed, instructed ordered [*sic*]" the officer defendants to carry out the actions against Baca "and other similarly situated minority protesters or demonstrators." *Id.* ¶ 64. But there are no factual allegations supporting Baca's theory that these unnamed Doe defendants "ordered" or "authorized" the officer defendants to carry out the alleged conduct at issue. Nor has Baca alleged any facts to support his theory that the unnamed Doe defendants are final policymakers. Without the requisite factual support, Baca's *Monell* claim based on an alleged final policymaker violating his constitutional rights is deficiently pleaded and must be dismissed.

### C. Baca's Ratification Allegations Are Also Conclusory (Claim Nine)[3]

The Supreme Court has held that "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. Thus, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality . . ." *Praprotnik*, 485 U.S. at 127.

---

[3] The Complaint has two claims which are labeled "Ninth Claim for Relief." *See* Compl. ¶¶ 60–70.

1    Baca's allegations concerning ratification are scant and entirely conclusory. Mot. at 12.
2    He alleges that defendants City of San Jose, County of Santa Clara,[4] and Does 51–75 "ratified" the
3    "wrongful acts and omissions" undertaken by the officer defendants, and that the City of San Jose,
4    County of Santa Clara, and Does 51–75 "knew of and specifically made a deliberate choice to
5    approve, endorse, accept, reward, and/or adopt" the unconstitutional actions of the officer
6    defendants. Compl. ¶ 69. But he does not allege any specific facts that would give rise to a
7    plausible inference that any official with policy-making authority made a deliberate choice or
8    approved the basis for the unconstitutional conduct he alleged that would be required to hold the
9    City of San Jose liable on a theory of ratification. Accordingly, I dismiss Baca's *Monell* claim
10   based on a theory of ratification.

**D. Baca's Failure to Train Allegations Are Also Conclusory (Claim Ten)**

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Failure to train government employees may constitute a sufficient policy under *Monell* if the failure constitutes "deliberate indifference" or otherwise "reflects a deliberate or conscious choice" by the government entity. *City of Canton v. Harris*, 489 U.S. 378, 389–93 (1989) (internal quotation marks omitted). When a failure to supervise is "sufficiently inadequate," it may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision does not give rise to a *Monell* claim; rather, they need to train must be "obvious." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal quotation marks and citation omitted).

Baca has alleged that the City of San Jose and Does 51–75 are liable for the conduct of the officer defendants based on inadequate training, *see* Compl. ¶ 74, but has alleged no specific facts

---

[4] I assume that this is an error because the County of Santa Clara is not named as a defendant in the complaint, nor has the County of Santa Clara entered an appearance in the case.

17

1  regarding the type of training that was deficient, the nature of the alleged deficiencies, or how the
2  allegedly unconstitutional conduct of the officer defendants resulted from the training. The
3  allegations do not give rise to a plausible inference that the City of San Jose can be held liable on
4  the basis of any inadequate training program.

In sum: none of Baca's theories suffice to state a claim under *Monell*. I will give Baca leave to amend so that he can provide the requisite factual support needed to state a claim.

## VI.  CLAIMS UNDER CALIFORNIA LAW (CLAIMS ELEVEN AND TWELVE)

In addition to the federal claims, Baca asserts claims under California's Ralph and Bane Acts. Compl. ¶¶ 77–88. Defendants argue that both claims must be dismissed because they are time-barred under the Government Claims Act and substantively deficient. Mot. at 12–13. Defendants are correct that the claims are time-barred.

Under the Government Claims Act, set forth in California Government Code sections 810 *et seq.*, a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the public entity. *See* Cal. Gov. Code § 945.4. The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" is mandatory. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1244 (2004); *Rubenstein v. Doe No. 1*, 3 Cal. 5th 903, 906 (2017), *as modified on denial of reh'g* (Nov. 1, 2017) ("Compliance with the claim requirement is a condition precedent to suing the public entity."). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. *Bodde*, 32 Cal. 4th at 1240. A claim related to a cause of action "for injury to person" must be presented within six months from when it accrued, and any suit must be filed "not later than six months after" the public entity rejects the claim. Cal. Gov. Code §§ 911.2, 945.4, 945.6.

Baca concedes that he did not allege compliance with the Government Claims Act in his complaint. Opp. at 7. In conjunction with his opposition brief, however, he requested that I take judicial notice of the claim that he presented to the City of San Jose, which is dated November 19,

2020.  *See* Ex. A to Fong Decl. [Dkt. 35-1].  Baca also attached a copy of the San Jose's rejection of that claim, which is dated January 4, 2021.  *See* Ex. B to Fong Decl. [Dkt. 35-2].  The notice of rejection included a proof of service indicating that it had been deposited in the mail on January 6, 2021.  *Id.*

Baca then had six months after the notice of rejection had been mailed to him to file any legal action alleging state-law causes of action based on defendants' alleged actions during the May 2020 protest.  *See* Cal. Gov't Code § 945.6.  He did not meet the July 2021 deadline.  He filed his complaint in this action, alleging the state-law causes of action for the first time, on April 21, 2022.  *See* Compl.  As a result, the Government Claims Act categorically bars Plaintiffs' state-law claims in this lawsuit.  Cal. Gov't Code §§ 945.4, 945.6; *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (Cal. 2007) ("The deadline for filing a lawsuit against a public entity, as set out in the government claims statute, is a true statute of limitations defining the time in which, after a claim presented to the government has been rejected or deemed rejected, the plaintiff must file a complaint alleging a cause of action based on the facts set out in the denied claim."); *County of Los Angeles v. Superior Court*, 127 Cal. App. 4th 1263, 1266 (2005) (holding that lawsuit against county was "time-barred" because the plaintiff did not file suit "within six months after the County mailed its notice rejecting [the] claim"); *see also Wills v. City of Monterey*, No. 21-cv-01998-EMC, 2022 WL 3030528, at *13 (N.D. Cal. Aug. 1, 2022) (dismissing state law claims where plaintiff failed to show compliance with the Government Claims Act).

Because the state-law claims are time-barred, I do not reach defendants' second argument that the claims should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, I **GRANT IN PART** defendants' motion to dismiss.  I **DENY** the motion to dismiss the First Amendment claim, but **GRANT** the motion to dismiss the remainder of the claims at issue.  Baca has leave to amend all of the federal claims at issue in this motion, but not claim three or the state law claims, eleven and twelve.  Any amended complaint

shall be filed within twenty days of the date of this order.

**IT IS SO ORDERED.**

Dated: October 12, 2022

William H. Orrick
United States District Judge